Filed 7/31/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TRAVIS MITCHELL HICKS,<br><br>    Defendant and Appellant. | D081981<br><br><br>(Super. Ct. No. RIF1800868) |

APPEAL from a judgment of the Superior Court of Riverside County, Stephen J. Gallon, Judge.  Reversed and remanded.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Donald W. Ostertag, and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.


A jury convicted Travis Mitchell Hicks of attempted murder and assault with a semiautomatic firearm, among several other offenses and enhancements.  The convictions stemmed from a shooting that took place after a confrontation at a bar between Hicks and the victim.  On appeal from

that verdict, Hicks, who is African-American, argues the trial court violated his constitutional rights under *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) when it overruled his counsel's objection to the prosecutor's use of a peremptory challenge against an African-American prospective juror. As we shall explain, we agree the court erred when it overruled the defense objection. Accordingly, the judgment is reversed and the matter is remanded for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 2018, around midnight, the victim went to a bar in Moreno Valley with several friends. He was extremely intoxicated when he encountered Hicks, and the two men became involved in an argument. Witnesses overheard the men make gang-related references, followed by two loud gunshots within seconds of each other. Hicks testified in his own defense and told the jury the victim, who was not armed, threatened to shoot him several times and that he shot the victim in self-defense. Hicks shot the victim in his right arm and back, paralyzing him from the waist down.

Hicks fled the scene, but was detained the following day. He initially denied shooting the victim, but eventually admitted his involvement to investigators. Thereafter, the Riverside County District Attorney filed an information charging Hicks with attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a); count 1); assault with a semiautomatic firearm (§ 245, subd. (b); count 2); possession of a firearm by a prohibited person (§ 29800, subd. (a)(1); count 3); and possession of ammunition by a prohibited person (§ 30305, subd. (a); count 4).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

As to count 1, the information alleged that Hicks personally inflicted great bodily injury (§§ 12022.7, subd. (a), 1203.075, subd. (a)) and that he personally and intentionally discharged a firearm and proximately caused great bodily injury to another person who was not an accomplice (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8)).  As to count 2, the information alleged that Hicks inflicted great bodily injury causing the victim to suffer paralysis (§ 12022.7, subd. (b)) and that he personally inflicted great bodily injury (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)).  The information also alleged that Hicks had a prior conviction for committing assault with a semiautomatic firearm (§§ 245, subd. (b), 667.5, subd. (b)), which qualified as a serious felony (§ 667, subd. (a)) and a serious violent felony (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)).

After a six-day trial, the jury found Hicks guilty of all counts and found true all of the enhancement allegations as to counts 1 and 2.  In a separate trial, the court found the prior conviction allegations true.  The court sentenced Hicks to state prison for a determinate sentence of 12 years 8 months plus an indeterminate sentence of 14 years to life.  Hicks filed a timely notice of appeal.

## DISCUSSION

Hicks's only contention on appeal is that by allowing the prosecutor's peremptory challenge of an African-American juror, the court violated his right " 'to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the state Constitution' " and " ' "to

3

equal protection under the Fourteenth Amendment." ' "[2]  (*People v. Taylor*
(2010) 48 Cal.4th 574, 611.)  In response, the Attorney General asserts that
substantial evidence supported the trial court's decision to allow the
peremptory challenge finding that the prosecutor's stated reasons for striking
the juror were valid and race neutral.

I

*Additional Background*

During the general voir dire of the jury panel, the juror in question
fielded two questions from trial counsel.  The prosecutor asked her whether
she could convict the defendant, if the evidence showed his guilt beyond a
reasonable doubt, even if she did not like the victim of the crime.  She
responded that whether she liked the victim would not influence her decision
and explained that as a former prison nurse, she made a conscious decision
not to look at the reasons for her patients' incarceration because she did not
want that information to influence the care she provided.  Later, the
prosecutor noted that the juror had stated in her juror questionnaire
responses that she had both positive and negative feelings about the criminal
justice system, and asked the juror to explain.  The juror then asked if she
could discuss her answer in private.  She also stated that she could set aside
her feelings and she had the ability to focus on the task at hand, and not
bring her feelings into her role as juror.

---

[2]    In his initial opening brief, Hicks asserted that the court's ruling
allowing the prosecutor's peremptory challenge violated Code of Civil
Procedure section 231.7.  That statute, however, took effect after the jury was
empaneled in Hicks's trial and is not applicable to his case.  As a result, we
permitted Hicks to file a supplemental opening brief and the Attorney
General to file a supplemental respondent's brief.

After the session of questioning concluded, counsel joined the juror in chambers with the judge outside the presence of the other panelists. The juror explained that she had two felony convictions, grand theft and perjury, which occurred seven years earlier. She did not want to disclose this information in front of the other prospective jurors because she feared it would bias them against her. She also stated that she had served on a jury before, and had been a witness both for the defense and the prosecution in past criminal cases. She explained that her felony convictions would not color her decision making as a juror. When the court asked her if she felt she was treated fairly by the justice system, she answered yes, and stated that she could be impartial. The prosecutor then noted that on her questionnaire she stated something along the lines that "justice had been served" in her case. The juror responded that being convicted of the crimes was the negative she referred to in her questionnaire, but that it was "one of life's lessons" and she had learned from it and moved on.

When it came time to exercise peremptory strikes, the prosecutor used a challenge to remove the juror. Hicks's defense counsel then moved to prevent the challenge on the grounds it was discriminatory under *Batson, supra*, 476 U.S. 79 and *Wheeler, supra*, 22 Cal.3d 258. Defense counsel noted that Hicks is African-American, and this juror was one of only two African-Americans in the jury pool at that time. Counsel explained, "I don't know if the record is clear, but my client is African-American and the victim is also African-American. And going back over [the juror's] questionnaire and her answers to questions during voir dire, including back here in chambers, she was very clear that she could be fair. She had experience with the criminal justice system from pretty much all sides of it. ... She seems like an excellent

juror.  She presented as an excellent juror, and there was simply nothing more to justify a strike."

In response, the prosecutor stated his reasoning "was one, that she did disclose she was convicted of grand theft.  And I know that she states that justice was served for her.  And while I agree that she does have some experience on both sides, I felt the way she talked about her experiences, she was rather too opinionated about the way she was explaining things, and I felt like that would interfere with the ability to work with other jurors and would always just come from a—well, I did—I had this experience and I had that experience.  So that's really my reason for exercising the peremptory."

The court stated it would allow the peremptory challenge: "The court feels that the stated reason is acceptable to the court that a juror was convicted of grand theft.  And so that would be a race-neutral reason for a peremptory challenge.  The challenge will be allowed."  Defense counsel then noted that the conviction was not the "stated reason," rather "it was more the opinionated ... way [the juror] stated her opinions.'  The prosecutor clarified, "It is a concern, Your Honor, because that's something that would, I guess, cloud her view of things, was her own negative experience of having gone through the justice system and having been convicted.  And it wasn't that long ago.  It was about six years ago."  The court then allowed "the excusing of that juror for the stated reasons."

## II

### *Legal Standards*

"Both the state and federal Constitutions prohibit the use of peremptory strikes to remove prospective jurors on the basis of group bias. (*Batson, supra*, 476 U.S. at p. 89; *Wheeler, supra*, 22 Cal.3d at pp. 276–277.)" (*People v. Scott* (2015) 61 Cal.4th 363, 383 (*Scott*).)  "The discriminatory use

6

of peremptory challenges harms not only defendants but also 'the excluded jurors and the community at large,' as it 'forecloses a significant opportunity to participate in civic life' [citation] and ' "undermine[s] public confidence in the fairness of our system of justice." ' [Citation.] 'The exclusion by peremptory challenge of a single juror on the basis of race or ethnicity is an error of constitutional magnitude requiring reversal.' " (*People v. Silas* (2021) 68 Cal.App.5th 1057, 1067–1068.)

To determine if a preemptory challenge is valid and race neutral, the trial court conducts the now familiar *Batson/Wheeler* inquiry, which "consists of three distinct steps. First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination." (*Scott, supra*, 61 Cal.4th at p. 383.)

"When the trial court solicits an explanation of the challenged excusals without first indicating its views on the prima facie issue, we may infer an implied prima facie finding. ... Once an implied prima facie finding has been made, that issue becomes moot, and the only question remaining is whether the individual justifications were adequate." (*People v. Arias* (1996) 13 Cal.4th 92, 135; see also *Scott, supra*, 61 Cal.4th at p. 387, fn. 1 ["When a trial court solicits an explanation of the strike without first declaring its views on the first stage, we infer an 'implied prima facie finding' of

discrimination and proceed directly to review of the ultimate question of purposeful discrimination."].)

Here, the court implicitly found Hicks established a prima facie case of racial discrimination. We, therefore, proceed to the third step of the *Batson/Wheeler* inquiry and analyze whether the court properly accepted the prosecutor's proffered race neutral reasons. (*Scott, supra*, 61 Cal.4th at p. 387, fn. 1; *People v. Hensley* (2014) 59 Cal.4th 788, 802 (*Hensley*).)

" 'At the third stage of the [*Batson/Wheeler*] inquiry, "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." [Citation.]' [Citation.] Implausible or fantastic justifications offered at the second stage may not be sufficiently credible to pass muster at stage three. [Citation.] 'In assessing credibility, the court draws upon its contemporaneous observations of the voir dire.' [Citation.] This assessment may also take into account 'the court's own experiences as a lawyer and bench officer in the community, and even the common practices of the advocate and the office that employs him or her.' " (*People v. Winbush* (2017) 2 Cal.5th 402, 434 (*Winbush*); see *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158–1159 (*Gutierrez*).) "This portion of the *Batson/Wheeler* inquiry focuses on the subjective genuineness of the reason, not the objective reasonableness." (*Gutierrez*, at p. 1158.) Importantly, "[w]hen they assess the viability of neutral reasons advanced to justify a peremptory challenge by a prosecutor, both a trial court and reviewing court must examine only those reasons actually expressed." (*Id*. at p. 1167.)

"When a reviewing court addresses the trial court's ruling on a *Batson/Wheeler* motion, it ordinarily reviews the issue for substantial evidence." (*Gutierrez, supra*, 2 Cal.5th at p. 1159.) " 'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges " 'with great restraint.' " [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses.' " (*Winbush, supra*, 2 Cal.5th at p. 434; see *Gutierrez*, at p. 1159.) " 'When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings.' " (*Hensley, supra*, 59 Cal.4th at p. 803.)

### III

### *Analysis*

Here, the record shows that the court relied on two reasons to find that the prosecutor's use of the peremptory challenge against this juror was race neutral. First, the prosecutor stated the juror's prior felony convictions were a negative experience that impacted the juror's ability to be impartial. Second, the prosecutor asserted the juror was too opinionated, which would interfere with her ability to work with other jurors. The trial court accepted these reasons as valid and race neutral. We conclude these findings were not supported by the evidence before the court.

### A

With respect to the felony convictions, Hicks first argues that the juror's convictions are not a proper basis for a peremptory challenge in light of Senate Bill No. 310 (Sen. Bill 310), which amended Code of Civil Procedure section 203 to allow individuals who have been convicted of a felony to serve

9

as jurors. Hicks also contends that to the extent the court's ruling was based on the juror's own negative experience with the justice system, insufficient evidence supported this finding. The People respond that Hicks forfeited his claim based on Senate Bill 310 because it was not raised below, and that sufficient evidence supported the court's finding that the juror's personal experience with the justice system could cloud her ability to serve on the jury.

As an initial matter, we agree with Hicks that his failure to specifically reference Senate Bill 310 when he asserted his *Baston/Wheeler* motion did not forfeit his ability to raise the law on appeal. Hicks's trial counsel was not required to explicitly state the law that was in effect at the time; rather, it is presumed the court and the prosecution were aware of the fact that a felony conviction no longer precluded an individual from jury service. (See *People v. Mosley* (1997) 53 Cal.App.4th 489, 496 ["The general rule is that a trial court is presumed to have been aware of and followed the applicable law."].)

Senate Bill 310 was enacted to address the discriminatory effect of prohibiting prior felons from serving on a jury—especially on African-American men. (Assem. Comm. on Judiciary, Analysis of Sen. Bill No. 310 (2019–2020 Reg. Sess., June 18, 2019, p. 5.) Under former California law, individuals who had suffered a prior felony conviction were prohibited from serving on a jury. (Sen. Comm. on Public Safety, Analysis of Sen. Bill No. 310, April 2, 2019, p. 2.) However, effective January 1, 2020, Senate Bill 310 amended Code of Civil Procedure section 203 to allow individuals who have been convicted of a felony to serve on juries so long as they are not (1) currently incarcerated in any prison or jail, (2) currently on parole, post-release community supervision, felony probation, or mandated supervision for the conviction of a felony, or (3) currently required to register as a sex

offender based on a felony conviction.  (Code Civ. Proc., § 203, subd. (a)(9), (10), (11).)

As the People point out, however, while Senate Bill 310 sought to "promote fairness and legitimacy in California's jury system by ensuring a more accurate cross section of the community," the author of the bill also made clear that the legislation "preserve[d] the existing right of Judges, District Attorneys, and the defense counsels to dismiss any potential jurors from a jury pool through the voir dire process."  (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 310 (2019–2020 Reg. Sess.) June 25, 2019, p. 4.)  Thus, while the juror was not prohibited from serving on the jury because of her prior felony conviction, the prosecutor was also not prohibited from exercising a peremptory challenge to dismiss her so as long as it was not based on group bias.  (See *People v. Lomax* (2010) 49 Cal.4th 530, 575 [a "criminal conviction [i]s a valid, race-neutral reason for the" dismissal of a prospective juror].)

This leads us to the prosecutor's proffered race-neutral reason that the juror's negative experience with the justice system interfered with her ability to serve on the jury.  Contrary to the People's assertion, there was no evidence in the record to support the trial court's finding that the juror's conviction clouded her ability to serve.  Rather, during voir dire of the juror in the judge's chambers, she explained that the only negative aspect of experience was the simple fact that she had been convicted of a felony.  Specifically, the juror explained that on her juror questionnaire she wrote that "justice was served" for her and that because she had worked for the prison system and gone through the justice system herself, it "was ironic to do both."  She stated the experience of going through the system was negative because "no one wants to go through being convicted.  No one wants to do

11

that. So that was the negative part." She then stated that it was a long time ago, and that "it has no bearing on the case."

While we are mindful that we must always defer to the trial court's credibility determinations, nothing stated by the juror during voir dire or by the court or counsel provides any basis to support the court's finding that the juror's experience as a convicted felon would interfere with her jury service. Notably, nothing in the record identified any characteristic that was observed by the court or counsel to support its finding that the challenge was race-neutral. To the contrary, during voir dire the juror stated multiple times that she could remain impartial and that her experience with the justice system in different capacities improved her ability to be neutral and unbiased. We agree with Hicks that this record does not support the court's finding that this juror's prior felony conviction was a race-neutral reason for the prosecutor's peremptory challenge. (See *People v. Silva* (2001) 25 Cal.4th 345, 385 [" 'The trial court has a duty to determine the credibility of the prosecutor's proffered explanations' [citation], and it should be suspicious when presented with reasons that are unsupported or otherwise implausible"]; and *People v. Miles* (2020) 9 Cal.5th 513, 539 (*Miles*) [" ' "[w]hen the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient." ' "].)

B

The other, and perhaps primary, reason provided by the prosecutor in support of the challenge was that the juror was "too opinionated." As Hicks points out in his briefing, " 'a problematic attitude' has been historically associated with improper discrimination in jury selection." Recent enacted

12

legislation overhauling the procedure used to determine if a peremptory challenge is unconstitutional highlights this problem.

Although not applicable in this case, Code of Civil Procedure section 231.7, sets forth the Legislature's express findings "that peremptory challenges are frequently used in criminal cases to exclude potential jurors from serving based on their race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that exclusion from jury service has disproportionately harmed *African Americans*, Latinos, and other people of color." (Assem. Bill No. 3070 (2019–2020 Reg. Sess.) § 1(b), italics added.) The new law states that "[t]he existing procedure for determining whether a peremptory challenge was exercised on the basis of a legally impermissible reason has failed to eliminate ... discrimination," and thus "designates several justifications as presumptively invalid." (*Ibid*.) Included among those presumptively invalid reasons are "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system," and whether "[t]he prospective juror exhibit[s] either a lack of rapport or problematic attitude, body language, or demeanor." (Code Civ. Proc., § 231.7, subds. (e)(1), (g)(1)(B), (g)(2).)

The new law does not apply in this case, but it does inform the *Batson/Wheeler* analysis. The suspect reasons for using a peremptory challenge that were identified by the Legislature echo case law holding that "explanations which focus upon a venireperson's body language or demeanor must be closely scrutinized because they are subjective and can be easily used by a prosecutor as a pretext for excluding persons on the basis of race." (*People v. Harris* (1989) 129 Ill.2d 123, 176; see also *Harris v. Hardy* (7th Cir.

13

2012) 680 F.3d 942, 965 ["Demeanor-based explanations for a strike are particularly susceptible to serving as pretexts for discrimination."].)

Although the prosecutor stated his view that the juror would be too opinionated because of her experience with the justice system, there is no evidence of this character trait in the record. During voir dire, the juror expressed that she could remain neutral and had experience doing so as a prison nurse. In addition, the juror made no comments that suggested she was more opinionated than other jurors who remained on the jury. For example, Alternate Juror 1 expressed an opinion in favor of law enforcement and showed a strong opinion of how jurors should behave. The alternate explained that when serving on a jury in a prior trial, he had witnessed other jurors refusing "to make a ruling because there was no photographic evidence of the crime," which he found "ridiculous." Alternate Juror 1 stated he could put his bias aside. The challenged juror, in contrast, made no statement in favor of the defense or the prosecution, and stated only that she would judge the case on the evidence presented. This discrepancy in treatment suggests

that the peremptory challenge at issue here was pretextual.[3] (See *Gutierrez, supra*, 2 Cal.5th at p. 1173 ["comparative analysis may be probative of purposeful discrimination at *Batson*'s third stage," though "[t]he individuals compared need not be identical in every respect aside from ethnicity"].)

Crucially, no evidence in the record before this court supports the trial court's determination that the prosecutor's assertion that the juror was too opinionated was race neutral.[4] In addition, the trial court accepted the

---

[3] The Attorney General asserts, "a prosecutor may excuse a juror based on their sincere belief that the juror is too opinionated or would be unable or unwilling to deliberate with fellow jurors." In support of the assertion, he cites *Miles, supra*, 9 Cal.5th 513 and *People v. Gutierrez* (2002) 28 Cal.4th 1083. In *Miles*, the court concluded that the prospective juror's *explicit* statement in his juror questionnaire that he was a leader because he preferred his own opinion over those of others supported the challenge based on the prosecutor's proffered reason that the juror "might have difficulty considering other opinions and deliberating with fellow jurors—particularly given that [the panel member] had not worked with a group of people to make a decision before." (*Miles*, at p. 553.) Likewise, in *People v. Gutierrez, supra*, at page 1125, the prospective juror at issue expressly "commented that he would not be influenced by anyone's opinion but his own." Unlike the jurors at issue in these cases, here, there was no evidence showing that the juror was opinionated in such a way. To the contrary, she expressed that her past experiences would not color her consideration of the evidence in this case.

[4] The Attorney General points out that the prosecutor's acceptance of another African-American juror in this case supports a showing of good faith by the prosecutor. We agree this fact " 'lessen[s] the strength of any inference of discrimination that the pattern of the prosecutor's strikes might otherwise imply.' (*People v. Reed* (2018) 4 Cal.5th 989, 1000.) But accepting one juror of a particular group does not necessarily mean another juror of the same group was *not* dismissed due to membership in the same group. There could be reasons why one juror appears favorable to the party, while the other juror is nonetheless stricken precisely because of his or her group." (*People v. Collins* (2021) 60 Cal.App.5th 540, 554.)

prosecutor's stated reasons without itself discussing the juror's demeanor or testimony during voir dire, leaving this court with no basis to evaluate whether such factors were relevant to its decision to deny Hicks's *Batson/Wheeler* motion. (See *Snyder v. Louisiana* (2008) 552 U.S. 472, 479 [finding *Batson* error where "the record [did] not show that the trial judge actually made a determination concerning [the prospective juror's] demeanor"].) On this record, we agree with Hicks that insufficient evidence supported the trial court's finding that the prosecutor's stated reasons for his peremptory challenge of this juror were race neutral.

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial at the election of the District Attorney.

McCONNELL, P. J.

I CONCUR:

RUBIN, J.

I CONCUR IN THE RESULT:

O'ROURKE, J.

16